**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Boulevard, 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Julian Diamond *
Matthew Girardi *
1330 Avenue of the Americas, Floor 32
New York, NY 10019
Telephone: (646) 837-7150
E-Mail: jdiamond@bursor.com
         mgirardi@bursor.com

*Pro Hac Vice Application Forthcoming*

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NICOLE COSTA, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>THE PROCTER AND GAMBLE COMPANY,<br><br>    Defendant. | **Case No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

Plaintiff Nicole Costa ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant The Procter and Gamble Company ("P&G" or "Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

**NATURE OF ACTION**

1. This is a consumer protection class action lawsuit on behalf of purchasers in the United States of Gain Flings! Laundry Detergent Pacs and Gain Aroma Boost Laundry Detergents (the "Products") that are labeled and marketed as "50% more" (the "Representation"). This Representation leads reasonable consumers, like Plaintiff, to believe that the Defendant increased the quantity of laundry detergent in its Products. In actuality, Defendant's deceptive "50% more" Representation only signifies that the Products contain 50% more scent, not 50% more detergent.

2. Defendant P&G owns the Gain brand, a fabric care brand that includes laundry detergents, cleaners, and fabric softeners. P&G manufactures, markets, and sells Gain products nationwide online and in retail stores.

3. P&G markets and sells the Products with packaging claims of "50% more" in large, bold lettering on the top of the containers.



4. Gain Aroma Boost Laundry Detergents' packaging also contains the "50% more" Representation in large, bold lettering at the top of the bottles.



5. Because the Products indicate that they contain "50% more," Plaintiff and Class Members reasonably believed they were receiving 50% more laundry detergent versus a typical Gain container or competing laundry detergents when they purchased the product. In other words, they interpreted "50% more" to mean that they could usually get a certain number of loads of laundry worth of detergent for the same price, but this container could be used to do 50% more loads of laundry.

6. Customers received neither. Contrary to any reasonable understanding of the "50% more" Representation, Defendant is actually referring to 50% more "scent" than other detergents. The Product packaging does not clarify or explain this claim.

7. Instead, Defendant buries a disclaimer about the Representation online.

8. For example, the Gain Flings! Laundry Detergent Pacs are listed on Amazon using the same packaging photos referenced above. Upon viewing the page with the Product, a series of photo advertisements are included. The fourth photo in the series states "50% More Freshness."





9. Even in the unlikely event a consumer were to click on the photo above, the statement is still ambiguous, as the meaning of "freshness" is unclear, and could be reasonably interpreted to mean "volume" or "loads-worth" of detergent per unit.

10. It is not until a consumer views a third disclaimer-within-a-disclaimer in the above image that Gain clarifies that "freshness" means "*freshness ingredients vs. Cheer detergent."

11. And that definition is not even consistent.  Only if a consumer scrolls down the landing page to see the concealed list titled "About this item" are they told that the Product has "50% more scent than Gain liquid laundry detergent."

**About this item**
- 3-in-1: Gain detergent, Oxi Boost, and Febreze Freshness
- 6 weeks of freshness from wash until wear
- 50% more scent than Gain liquid laundry detergent
- Works in all washing machines even in cold water
- Keep out of reach of children

12. Not only are these statements highly unlikely to be seen by a reasonable consumer purchasing the Products online (let alone in-store, where they are **never** seen), they are also ambiguous and inconsistent, and thus do not clarify the meaning of "50% more."

13. Again, in any event, reasonable consumers do not see any disclaimers **at all**.  All they see is the Representation on the packaging and labeling: an unambiguous promise that Defendant has increased the quantity of Laundry Detergent in the Products, either by volume of detergent or load-washing capacity.  Plaintiff and Class Members have no reason or obligation to search online for clarification of Defendant's straightforward statement.

14. Due to Defendant's misleading Representations, Plaintiff and Class Members purchased the Products under the reasonable belief they were receiving "50% more" Laundry Detergent at a discount.  No reasonable consumer would know, or have reason to know, that the Products' "50% more" Representation refers to an increased amount of scent instead of a greater

CLASS ACTION COMPLAINT    4

quantity of detergent. Plaintiff and other similarly situated consumers have been harmed in the amount they paid, or overpaid, for the Products.

15. Plaintiff asserts claims on behalf of herself, a nationwide class, and a California subclass of purchasers of the Products, for breach of express warranty, breach of the implied warranty of merchantability, breach of the implied warranty of fitness for a particular purpose, unjust enrichment, violation of the California Consumer Legal Remedies Act ("CLRA"), violation of the California Unfair Competition Law ("UCL"), and violation of the California False Advertising Law.

## PARTIES

16. Plaintiff Nicole Costa is and was at all times relevant a citizen of Pacific Grove, California. In or around July 2023, Plaintiff Costa purchased Gain Flings! Laundry Detergent Pacs on Target.com. Ms. Costa purchased the Product based on the reasonable belief it contained 50% more laundry detergent than other similar products. This belief was based on her review of the Product photo, which showed "50% more" in large bold lettering on the top of the container. Ms. Costa relied on this representation when determining whether to purchase the Product. Had Ms. Costa known at the time of purchase that "50% more" meant increased scent instead of 50% more detergent, she would not have purchased the Product, or would have purchased the Product for substantially less. Ms. Costa suffered an economic injury due to Defendant's misrepresentations.

17. Defendant The Procter & Gamble Company is an Ohio corporation with its principal place of business in Cincinnati, Ohio. P&G manufactures, sells, and/or distributes Gain laundry products and is responsible for the advertising, marketing, trade dress, and packaging of the Products. P&G manufactured, marketed, advertised, and sold the Gain Flings! Laundry Detergent Pacs and Gain Aroma Boost Laundry Detergents during the class period nationwide.

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and Plaintiff, as well as most

members of the proposed class, are citizens of states different from Defendant.  This Court also has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

19. Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.  Plaintiff is a citizen of California, residing in this District, and purchased the Products in this District.  Moreover, Defendant distributed, advertised, and sold the Products, which is the subject of the present complaint, in this District.

## CLASS REPRESENTATION ALLEGATIONS

20. Plaintiff seeks to represent a class defined as all persons in the United States who purchased Gain Flings! Laundry Detergent Pacs and Gain Aroma Boost Laundry Detergents marketed as "50% more" (the "Class").

21. Plaintiff also seeks to represent a subclass of all Class members who purchased the Products in California (the "California Subclass").

22. Excluded from the Classes are persons who made such purchases for purpose of resale.

23. **Numerosity**. Members of the Class and Subclass are so numerous that their individual joinder herein is impracticable.  Gain is a leading laundry detergent brand; thus, members of the Class number in the millions and members of the California Subclass number in the hundreds of thousands.  The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

24. **Commonality**. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to: whether Defendant made false and/or misleading statements to the consuming public regarding the Products, whether Defendant omitted material information to the consuming public regarding the Products, whether Defendant's advertising is

misleading and/or deceptive, and whether Defendant made and breached express and/or implied warranties to consumers.

25. **Typicality**. The claims of the named Plaintiff are typical of the claims of the Class in that, among other things, the Class and California Subclass purchased the Products and were deceived by the labeling and advertising for "50% more." All Class and California Subclass members were comparably injured by Defendant's wrongful conduct as set forth herein. Further, there are no defenses available to Defendant that are unique to Plaintiff.

26. **Adequacy**. Plaintiff is an adequate representative of the Class and Subclass because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiff and her counsel.

27. **Predominance**. Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class and California Subclass. The Class's issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

28. **Superiority**. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class and Subclass members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's

CLASS ACTION COMPLAINT 7

liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

### COUNT I
### Breach Of Express Warranty
### (On Behalf of the Class and California Subclass)

29. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

30. Plaintiff brings this claim individually and on behalf of the members of the proposed Class and California Subclass against Defendant.

31. Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted that the Products contained "50% more." This expressly warranted to consumers that the Products contained 50% more Laundry Detergent.

32. In fact, the Products do not conform to Defendant's representations and are underfilled because they do not contain 50% more Laundry Detergent. The Products are therefore illegal for sale in the United States.

33. As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff and Class members have been injured and harmed because they: (1) paid money for the Products that were not what Defendant had represented; (2) were deprived the benefit of their bargain because the Products they purchased were different from those advertised by Defendant; and (3) were deprived the benefit of their bargain because the Products contained less Laundry Detergent than Defendant advertised. Had Defendant not made the false representations alleged herein, Plaintiff and Class members would not have purchased the Products or would have paid less than they did for the Products.

### COUNT II
### Unjust Enrichment
### (On Behalf of the Class and California Subclass)

34. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

35.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and California Subclass against Defendant.

36.     To the extent required by law, this cause of action is alleged in the alternative to legal claims, as permitted under Fed. R. Civ. P. 8.

37.     Plaintiff and Class members conferred benefits on Defendant by purchasing the Products.

38.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff and Class members' purchases of the Products.  Retention of those moneys under these circumstances is unjust and inequitable because Defendant sold underfilled Products and deceptively marketed the Products. Defendant's acts and omissions cause injuries to Plaintiff and Class members because they would not have purchased the Products or would have paid substantially less for the Products if the true facts were known.

39.     Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff and Class members for its unjust enrichment, as ordered by the Court.

**COUNT III**
**Violation Of California's Consumers Legal Remedies Act ("CLRA")**
**California Civil Code §§ 1750, *et seq.***
**(On Behalf of the California Subclass)**

40.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

41.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

42.     California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."

43. Defendant violated this provision by misrepresenting that the Products contained "50% more" in quantity or volume of detergent and that the Products were legal for sale in the United States.

44. Defendant further violated § 1770(a)(9) by advertising the Products with the intent not to sell them as advertised.

45. Defendant was responsible for the marketing, manufacturing, distribution, and/or sale of the Products and was aware that the statement "50% more" to a reasonable consumer would mean 50% more in quantity or volume of detergent.

46. Plaintiff and the California Subclass Members have suffered harm as a result of these violations of the CLRA because they have incurred charges and/or paid monies for the products that they otherwise would not have incurred or paid have they know the truth about Defendant's representations and omissions regarding the meaning of "50% more."

47. The CLRA was enacted to protect consumers against such practices. The CLRA applies to Defendant's conduct because the statute covers all sales of goods to consumers.

48. Plaintiff and other members of the California Subclass are "consumers" within the meaning of Cal. Civ. Code § 1761(d). By purchasing Defendant's Products, Plaintiff and other members of the California Subclass engaged in "transactions" within the meaning of Cal. Civ. Code §§ 1761(e) and 1770.

49. Defendant Procter & Gamble is a "person" within the meaning of Cal. Civ. Code § 1761(c). Defendant's Products are "goods" within the meaning of Cal. Civ. Code § 1761(a).

50. Defendant's unfair and deceptive business practices, as alleged above and herein, were intended to and did result in the sale of the Products.

51. As a direct and proximate result of Defendant's unfair and deceptive business practices, as alleged above and herein, Plaintiff and other members of the California Subclass suffered injury.

52. Defendant's unfair and deceptive business practices, as alleged above and herein, were willful, wanton, and fraudulent.

53. Defendant's officers, directors, and/or managing agents authorized the use of the false and misleading statements and material omissions regarding the claims about the volume and/or quantity of detergent in the Products, as alleged above and herein.

54. Wherefore, Plaintiff seeks injunctive relief for this violation of the CLRA.

**COUNT IV**
**Violation Of California's Unfair Competition Law ("UCL")**
**California Business & Professions Code §§ 17200, *et seq.***
**(On Behalf of the California Subclass)**

55. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

56. Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

57. Defendant violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, by engaging in unfair, fraudulent, and unlawful business practices.

58. Plaintiff has standing to pursue this claim because she has suffered injury-in-fact and have lost money or property as a result of Defendant's unlawful, unfair, and fraudulent conduct. Specifically, Plaintiff purchased the Products for her own personal use. In doing so, Plaintiff relied upon Defendant's false representations that the Products contained "50% more." Plaintiff spent money in these transactions that she otherwise would not have spent had she known the truth about Defendant's advertising claims.

***"Unfair" Prong of the UCL***

59. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. That unfairness is determined by weighing the reasons, justifications, and motives for the business act or practice against the gravity of the harm to the alleged victims.

60. Defendant's conduct constitutes an "unfair" business practice because, as alleged herein, Defendant has engaged, and continues to engage, in a false, misleading, and deceptive advertising campaign that misleads consumers into believing that the Products contain 50% more detergent than other similar products, when in fact, they do not.

61. Defendant's conduct, as alleged above and herein, was not motivated by any legitimate business or economic need or rationale, other than to maximize its profits at the expense of consumers. No legitimate reasons, justifications, or motives outweigh the harm and adverse impact of Defendant's conduct on members of the general consuming public. Defendant engaged, and continues to engage, in such conduct solely to wrongfully extract monies to which Defendant is not entitled from reasonable consumers seeking a product with 50% more laundry detergent, including from Plaintiff. Defendant could have, but has not, used alternate means of effecting its legitimate business needs, such as by properly and clearly disclosing that the Products do not contain 50% more detergent, and instead contain 50% more fragrance.

62. Defendant's conduct harms consumers and hurts competition in the market. Defendant's conduct, as alleged herein, is immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiff and members of the California Subclass because it violates consumers' reasonable expectations. If Defendant had advertised the Products in a non-misleading fashion, Plaintiff and other California Subclass members could have considered other options for purchasing detergents.

**"Fraudulent" Prong of the UCL**

63. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

64. Defendant has engaged in a "fraudulent" business practice by knowingly representing to consumers that the Products they purchase contain 50% more detergent when they do not. Defendant's conduct deceived Plaintiff and other California Subclass members who purchased the Products in reliance on the claims about the amount, and this conduct is highly likely to deceive members of the consuming public because, as alleged above, it violates consumers' reasonable expectations given Defendant's superior knowledge and position on the market. Such a business practice lacks utility and functions only to maximize Defendant's profits at the expense of its customers. The gravity of the harm to Plaintiff and other California Subclass members, who lost money or property by paying for the Products, far outweighs any benefit of Defendant's conduct.

*"Unlawful" Prong of the UCL*

65. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

66. Defendant's business practices, as alleged herein, constitute violations of California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq. (the "CLRA"). Specifically, Defendant has unlawfully marketed and advertised its Products in violation of Cal. Civ. Code §§ 1770(a)(5) and 1770(a)(9) as detailed above.

67. Defendant's business practices also constitute violations of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, et seq. (the "FAL"), as detailed below.

68. Defendant's unfair, fraudulent, and unlawful business practices, as enumerated and explained above and below, were the direct and proximate cause of financial injury to Plaintiff and other members of the California Subclass. Defendant has unjustly benefitted as a result of its wrongful conduct. Accordingly, Plaintiff and the California Subclass seek an order of this Court that includes, but is not limited to, requiring Defendant to: (a) provide restitution to Plaintiff and other California Subclass members; (b) disgorge all revenues obtained as a result of its violations of the UCL; and (c) pay attorneys' fees and costs for Plaintiff and the California Subclass.

**COUNT V**
**Violation of California's False Advertising Law**
**Cal. Bus. & Prof. Code §§ 17500,** *et seq.*
**(On Behalf of the California Subclass)**

69. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

70. Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

71. Defendant violated California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, et seq. by publicly disseminating false, misleading, and/or unsubstantiated advertisements regarding the Products, as alleged above and herein.

72. Plaintiff has standing to pursue this claim because she has suffered injury-in-fact and have lost money or property as a result of Defendant's false advertising. Specifically, Plaintiff

purchased Defendant's Products for her personal use.  In doing so, Plaintiff relied upon Defendant's false and misleading representations regarding the amount of detergent in the Products.  Plaintiff spent money in the transaction that she otherwise would not have spent had she known the truth about Defendant's advertising claims.

73. Defendant disseminated false and misleading advertisements to increase the sales of its Products.

74. Defendant knew or should have known that the advertisements for its Products were false and/or misleading.

75. Defendant knew or should have known that consumers, including Plaintiff and other members of the California Subclass, would believe that the Products contained 50% more detergent than other similar products.

76. Plaintiff and members of the California Subclass have suffered harm as a result of Defendant's violations of the FAL because they paid monies for the Products that they would not have paid but for Defendant's false and misleading advertisements.

77. Accordingly, Plaintiff and members of the California Subclass seek an order of this Court that includes, but is not limited to, requiring Defendant to: (a) provide restitution to Plaintiff and other California Subclass members; (b) disgorge all revenues obtained as a result of its violations of the FAL; and (c) pay attorneys' fees and costs for Plaintiff and the California Subclass.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

A. For an order certifying the nationwide Class and the Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and Subclass members;

B. For an order declaring the Defendant's conduct violates the statutes referenced herein;

  C. For an order finding in favor of Plaintiff, the nationwide Class, and the Subclass on all counts asserted herein;

  D. For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

  E. For prejudgment interest on all amounts awarded;

  F. For an order of restitution and all other forms of equitable monetary relief;

  G. For injunctive relief as pleaded or as the Court may deem proper; and

  H. For an order awarding Plaintiff and the Class and Subclass their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury of all issues so triable.

Dated: July 19, 2024    Respectfully submitted,

    **BURSOR & FISHER, P.A.**

    By: */s/ L. Timothy Fisher*

    L. Timothy Fisher (State Bar No. 191626)
    1990 North California Boulevard, 9th Floor
    Walnut Creek, CA  94596
    Telephone: (925) 300-4455
    Facsimile:  (925) 407-2700
    E-Mail:  ltfisher@bursor.com

    **BURSOR & FISHER, P.A.**
    Julian Diamond *
    Matthew Girardi *
    1330 Avenue of the Americas, Floor 32
    New York, NY  10019
    Telephone:  (646) 837-7150
    E-Mail: jdiamond@bursor.com
       mgirardi@bursor.com

    *\* Pro Hac Vice Application Forthcoming*

    *Attorneys for Plaintiff*

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, L. Timothy Fisher, declare as follows:

1. I am counsel for Plaintiff, and I am a partner at Bursor & Fisher, P.A. I make this declaration to the best of my knowledge, information, and belief of the facts stated herein.

2. The complaint filed in this action is filed in the proper place for trial because many of the acts and transactions giving rise to this action occurred in this District, and because Plaintiff alleges that he resides in this District.

3. Plaintiff alleges that he is a citizen of California and resident of Pacific Grove, California.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct, executed on July 19, 2024, at Walnut Creek, California.

/s/ L. Timothy Fisher
L. Timothy Fisher